# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

KEVIN J. BARKER,

              Petitioner,          :    Case No. 3:14-cv-321

    - vs -                        District Judge Walter Herbert Rice
                                      Magistrate Judge Michael R. Merz

SHERRI DUFFEY, Warden,
                               :
              Respondent.

# REPORT AND RECOMMENDATIONS

This is a habeas corpus action brought *pro se* by Petitioner Kevin J. Barker under 28 U.S.C. § 2254. Barker seeks relief from his conviction in the Montgomery County Court of Common Pleas on charges of engaging in a pattern of corrupt activity, promoting prostitution, and possession of criminal tools for which he is serving a sentence of eight years. The case is before the Court for initial review pursuant to Rule 4 of the Rules Governing § 2254 Cases which provides in pertinent part: "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."

Barker pleads the following grounds for relief:

> **Ground One**: Counsel rendered ineffective assistance, and failed to perform in a manner that his consistent with his duties and the expectation accorded him under the rights of the defendant to the effective assistance of counsel.
>
> **Supporting Facts**: Trial counsel failed in numerous charges to his client, he failed to properly prepaire [sic] and investigate prior to trial, failed to explore exculpatory evidence and failed to pursue a

1

line of defense that would have shown that the State's theory was
wholly lacking in fact and evidence and was unsupported by any
credible standard of guilt beyond a reasonable doubt. Counsel was
advised on numerous ocassion[s][sic] that the State's theory was
premised on evidence that was contrary to the facts and counsel
completely failed to pursue the alternative theory that was
presented to him and which could easily have shown that petitioner
was not guilty of the charges presented.

**Ground Two:** The evidence against petitioner was insufficient to
sustain the jury's verdict, and was contrary to clearly established
Federal law.

**Supporting Facts:** Inspite [sic] of the appellate court's efforts to
turn the "fact" around to support a theory advanced by the State,
the evidence was still lacking to support the jury's verdict finding
the petitioner guilty of the aforementioned charges.

(Petition, Doc. No. 1, PageID 5, 7.)

The Petition pleads that Barker was convicted by a jury on March 7, 2013, and sentenced

on April 3, 2013 (Doc. No. 1, PageID 1-2, ¶¶ 2, 6b). He appealed to the Second District Court of

Appeals which affirmed the conviction. *State v. Barker,* 2014-Ohio-1269, 2014 Ohio App.

LEXIS 1199 (2nd Dist. March 28, 2014). The Ohio Supreme Court declined jurisdiction over a

subsequent appeal. *State v. Barker*, 2014-Ohio-3012, 139 Ohio St. 3d 1473 (2014). Barker has

not filed any state court collateral attacks on his conviction (Petition, Doc. No. 1, PageID 3, ¶

10.)

Under 28 U.S.C. § 2254(e)(1), a state court's findings of fact are presumed correct and

may be rebutted by the petitioner only by clear and convincing evidence to the contrary.

*Cornwell v. Bradshaw*, 559 F.3d 398, 405 (6th Cir. 2009); *Mitchell v. Mason,* 325 F.3d 732, 737-

38 (6th Cir. 2003); *Warren v. Smith,* 161 F.3d 358, 360-61 (6th Cir. 1998). This statutory

presumption of correctness extends to factual findings made by state appellate courts on the basis

of their review of trial court records. *Girts v. Yanai,* 501 F.3d 743, 749 (6th Cir. 2007); *Mason v.*

2

*Mitchell,* 320 F.3d 604, 614 (6th Cir. 2003); *Brumley v. Wingard,* 269 F.3d 629, 637 (6th Cir. 2001), *citing Sumner v. Mata*, 449 U.S. 539, 546-47 (1981). The court of appeals found the following facts from the record of evidence presented at trial:

I. Barker's Peekaboodayton Business

[P3] In 2010, Dayton Police Department Vice Unit Detectives began investigating a business which advertised services under the "Escort" section of a website known as Backpage.com. Detectives called the telephone numbers listed in these advertisements and arranged meetings with various women at local hotels. One of the ads showed a woman with her hand in her underwear. Two others showed women with their buttocks exposed. One picture had a woman posing in her bra and another showed a woman reclining with her buttocks exposed. One of the advertisements showed a woman's naked torso with her breasts and vaginal area covered in strawberries and cream. One breast was partially exposed. Some of the pictures of the ads were found stored on Barker's cell phones and laptop computer.

[P4] Three women were thereafter arrested for, and convicted of, solicitation. A fourth woman was arrested on an unrelated warrant. The telephone numbers given in the advertisements were tracked to Barker whom, the detectives determined, operated a business known as Peekaboodayton. The detectives subpoenaed records from Backpage.com and ultimately determined that the advertisements on Backpage.com had been placed and paid forby Barker.

[P5] Detective Molly Hamby made contact with Barker and pretended to be interested in working for the business. Barker and Hamby made arrangements to meet at a local bar. Barker brought one of his employees, Nicole Ford, to the meeting. When Hamby asked Barker what was expected of employment, Barker replied, "[a]ll guys want is sex." Throughout the meeting Barker made statements that he did not encourage his employees to engage in sexual acts with clients. He also stated that he thought having sex was not worth the price paid by clients. He made a statement that he did not want Hamby to "f**k anybody or suck anybody," but that if a client had lots of money the employee could "go ahead and jack them off." Barker further stated that if an employee was in a room with a client and felt "comfortable, [then] what she decides to do with the client was her call." He also told her that she might go on appointments where a client requested that two women "got

down with" each other while the client watched. Barker told Hamby that he could not tell her how much to charge for sexual activity, but he did tell her that she should never be the first to "throw a number out." Nicole Ford statedthat she had engaged in sex with clients with whom she had been sent on dates. The meeting was recorded by other detectives at the scene.

[P6] Detectives obtained a search warrant for Barker's residence which was the mailing address he used when creating his account with Backpage.com. Detectives met there with Barker's wife, from whom he was separated, and determined that Barker was living in Trotwood with his girlfriend. Detectives went to the Trotwood home and spoke to him. He invited them into his home and consented to a search of the premises. The detectives obtained a laptop computer, two cellular telephones and some employment contracts.

[P7] It was determined that the two cellular telephones had the phone numbers listed on Backpage.com and were also utilized to arrange meetings with the Peekaboodayton employees who were subsequently arrested for solicitation. Barker admitted to the detectives that he owned Peekaboodayton and that he placed the Backpage.com advertisements. He stated that he ran a legitimate business. The business began as "Honey's," then changed to "G Wet Spot" before changing its name to Peekaboodayton.

[P8] One of the women arrested for solicitation during a sting operationtestified that she worked for Barker and Peekaboo and that she and the other female employees discussed, in Barker's presence, the fact that they engaged in sex with clients. However, she also stated that she was not certain that Barker knew that sex was occurring. She testified that Barker drove her to and from her appointments, had her sign a contract, and personally took pictures of her to post on the internet. The woman testified that sex was involved in "probably twenty or more" jobs to which she was sent. She testified that she was a prostitute and that Barker was "basically [her] pimp." The woman testified that Barker drove her to her meeting with Detective St. Clair and that during the ride Barker stated that he "had a bad feeling" about the meeting. She testified that she continued to work for Barker following her arrest for solicitation.

[P9] David Barnes, a Special Agent with the FBI assigned as laboratory director at the Miami Valley Regional Computer Forensic Lab, testified that during his examination of the laptop obtained from Barker's residence he found evidence that the

computer was used to access Backpage.com. He further found evidence of research regarding a Cincinnatiprostitution ring as well as ten other "hits" on the term "prostitution."

[P10]  Detective Doug George testified that in his experience as a Vice Detective, he was aware that prostitutes posted in the "escort" section of the "adult" section of Backpage.com. As part of this investigation, George responded to an ad on Backpage.com that indicated that a girl was available to go to a hotel and had a Barker's telephone number listed in the ad. No one answered his call, but George later received a call from a woman who identified herself as "Megan." George met the woman at a local hotel. The woman asked him if he had "protection." They then proceeded to go to a gas station and purchase condoms. The woman and George agreed to a price for sex. Ultimately, the woman was arrested and convicted of solicitation.

[P11]  George also responded to a Peedaboodayton [sic] ad featuring a woman clad in underwear with her buttocks in full view. Again, the ad had Barker's telephone number. A meeting was arranged with that woman at a hotel in Butler Township. George and the woman reached an agreement regarding money for sex. At that point, Detective St. Clair called George's cell phone and, posing as George's boss, stated that he was coming to George's room. George and the woman agreed that she would leave and wait across the street until George finished his meeting and called her. She gave him her cell phone number and left. The woman was subsequently arrested on an unrelated warrant. George testified that she was not charged with solicitation, because the meeting did not take place in Dayton.

[P12]  Detective Raymond St. Clair testified that he has made more then 2,500 arrests for prostitution, and has attended training seminars on the subject. He testified that he targets "escort" agencies under the "adult" section of advertisements because he has never responded to an ad of that description that did not result in a solicitation for prostitution. He testified that his investigations into the stripper, strip club, massage, and dating sections of the adult section had never resulted in prostitution.

[P13]  St. Clair, responding to Barker's ad, met a woman at a hotel. After exchanging money, the woman was arrested and convicted of soliciting prostitution.

[P14]  St. Clair testified that he responded to another ad traced to Peekaboo and Barker that showed a woman dressed in a thong

5

with her backside to the camera. St. Clair testified that the ad drew his attention because it stated "[y]ou can enjoy everything on my menu[,]" which he testified is a "prostitution term which refers to oral, vaginal and anal sex." He also noticed that she mentioned her "rates." The telephone number listed on this ad was later traced to Barker. Upon calling the number, St. Clair spoke with a woman who identified herself as April. She asked him if he was looking for "GFE" which he testified is a prostitute term meaning "girlfriend experience which is sex with kissing." The woman also stated that the rate would be $160 and she would send someone to meet him. He met a woman at a Dayton hotel. She stated that she was made aware that he wanted "everything." This woman was also arrested and convicted of soliciting prostitution.

[P15]  St. Clair testified that after the investigation netted four separate arrests for solicitation for prostitution he subpoenaed records from Backpage.com and learned that the advertisements contained e-mail addresses and telephone numbers belonging to Barker. The ads were charged to a credit card belonging to Barker's estranged wife.

[P16]  St. Clair found a website for Peekaboodayton.com that had a disclaimer stating that the company was a company of "independent entertainers" who "do not condone or support any kind of prostitution activity." St. Clair testified that in his experience, this type of disclaimer is typical of a pimp trying to "wash his hands of his prostitutes." The telephone number listed on the home page of the website belongs to Barker. The website contained pictures of women along with their height, weight and bra size. Some of the pictures were of girls in underwear or bikinis. This website was also traced to Barker. St. Clair then made arrangements for Detective Hamby to interview with Barker.

[P17]  A search warrant was issued for Barker's home. Barker was living with his girlfriend and consented to a search of their residence. The Peekaboo website was shut down minutes after the detectives searched Barker's residence.

[P18]  Nicole Ford testified that Barker was aware that some of her appointments involved sex. She further testified that Barker would drive her to and from her appointments.

*State v. Barker, supra.*

**First Ground for Relief:  Ineffective Assistance of Trial Counsel**

Barker presented to the state court of appeals the same two claims he makes here.  As to the First Ground for Relief, ineffective assistance of trial counsel, the court of appeals held:

[P21]  Barker's First Assignment of Error states as follows:

APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

[P22]  Barker contends that trial counsel was ineffective because he failed to: (1) develop, and inform Barker of, a trial theory; (2) provide Barker with discovery; (3) interview witnesses or present witnesses requested by Barker; (4) impeach witnesses with police reports; (5) investigate other advertisements placed by Barker which demonstrate that he was a legitimate businessman; (6) investigate a recanting witness; and (7) consult with Barker.

[P23]  To prevail on his ineffective-assistance claim, Barker must show that his attorney's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice exists where "there is a reasonable probability that, but for counsel's deficient performance, the outcome would have been different." *Id*. at 694.

[P24]  Barker does not cite to any portion of the record to support his claims. Instead, he attaches to his appellate brief an affidavit in which he avers that trial counsel was deficient in the above-cited ways. In a Decision and Entry dated November 19, 2013, upon motion of the State, we struck the affidavit as being outside of the record of this appeal. We cannot consider matters outside the record in a direct appeal. *State v. Pittman*, 2d Dist. Montgomery No. 25167, 2013-Ohio-962, ¶ 13, citing *State v. Cooperrider*, 4 Ohio St.3d 226, 228-229, 4 Ohio B. 580, 448 N.E.2d 452 (1983).

[P25]  Upon review, we find nothing in the record to lend support to Barker's claims of ineffective assistance of counsel. It appears from the record that trial counsel had a theory of the case, which

7

constituted, in part, of presenting Barker as a responsible man with a military background who ran a legitimate business. He further portrayed Barker as having been unfortunate to hire some women who were not trustworthy and who violated the terms of their contracts by engaging in sexual acts with customers. Whether counsel informed Barker of that theory, or provided him with discovery materials, is not something that can be gleaned from the record. Likewise, whether counsel consulted with Barker, investigated witnesses or advertisements, or failed to present or interview necessary witnesses is not something we can determine from this record. Finally, it appears that counsel did make reference to police reports during his cross-examination of the witnesses presented by the State.

**[P26]** Barker's First Assignment of Error is overruled.

*State v. Barker, supra.*

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter,* 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone,* 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).  Here the Second District Court of Appeals considered and applied the correct federal standard for ineffective assistance of trial counsel as prescribed in *Strickland v. Washington, supra*.  Barker has not shown or even argued how that application was an objectively unreasonable application of *Strickland*.

Apparently Barker relied on facts outside the appellate record by submitting an affidavit to the court of appeals.  The affidavit was stricken because Ohio law does not permit supplementation of the record on appeal in that way.

In his Petition, Barker states no facts outside the record on which he relies to show ineffective assistance of trial counsel.  He merely pleads conclusory allegations.  For example, he

says counsel did not properly investigate and prepare, but he does not offer any evidence of what counsel would have found had he investigated. He claims there is a line of defense which would have exonerated him, but he does not say what that line of defense is. He says he told his attorney on numerous occasions that the State's theory was contrary to facts, but he does not say what those other facts were. While trial counsel does have a duty to investigate, prepare for trial, and listen to his client, a failure on any one of these duties only constitutes ineffective assistance of trial counsel if the client is prejudiced and Barker has not shown any prejudice. To the extent Barker's First Ground for Relief is based on facts which were of record before the Second District, he has failed to show the Second District's decision is unreasonable.

Under Ohio law, facts outside the record which show ineffective assistance of trial counsel (or any constitutional violation) must be presented by way of a petition for post-conviction relief under Ohio Revised Code § 2953.21. However, Barker has not filed a petition for post-conviction relief and his time to do so has expired. The procedural default defense in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Therefore, any claim based on facts outside the record is barred by Barker's procedural default in presenting it to the state courts.

The First Ground for Relief should therefore be dismissed with prejudice.

**Second Ground for Relief:  Insufficient Evidence**

In his Second Ground for Relief, Barker claims he was convicted on insufficient evidence.  An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson,*  443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).  This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

11

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(*per curiam*).

This claim was submitted to the Second District on direct appeal and decided as follows:

> **[P27]** Barker's Second and Third Assignments of Error provide:
>
>> THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.[1]
>>
>> THE EVIDENCE AGAINST MR. BARKER WAS INSUFFICIENT TO SUSTAIN A JURY VERDICT OF GUILTY.
>
> **[P28]** Barker contends that the record does not contain evidence sufficient to sustain his convictions and that the convictions are not supported by the manifest weight of the evidence.
>
> **[P29]** "A challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence." *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 69. "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id*. at ¶ 70. A claim that a jury verdict is against the manifest weight of the evidence involves a different test. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Black*, 181 Ohio App.3d 821, 2009-Ohio-1629, 911 N.E.2d 309, ¶ 69 (2d Dist.).
>
> **[P30]** "Weight of the evidence concerns the inclination of the greater amount of credible evidence offered at trial, to support one side of the issue, rather than the other." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997 Ohio 52, 678 N.E.2d 541 (1997), citing *Black's Law Dictionary* 1594 (6th Ed.1990). The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230,

---

[1] A manifest weight of the evidence claim does not state a claim for relief under the Constitution, but only under state law. Barker makes no manifest weight claim in his Petition.

227 N.E.2d 212 (1967). "Because the factfinder, be it the jury, or, as in this case, the trial judge, has the opportunity to see and hear the witnesses, the cautious exercise of discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that a substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witnesses." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 Ohio App. LEXIS 3709, 1997 WL 477684, *5 (Aug. 22, 1997). This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict.

 **[P31]**  The State was required to prove Barker guilty of Promoting Prostitution in violation of R.C. 2907.22(A)(2) which states that"[n]o person shall knowingly * * * [s]upervise, manage, or control the activities of a prostitute in engaging in sexual activity for hire." "A person acts knowingly, regardless of purpose, when he is aware that his conduct will probably cause a certain result or will be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

 **[P32]**  Barker contends that he "operated an agency for women to perform massages, private dances, and entertain at bachelor parties." He claims that he actively discouraged the women from engaging in sexual activity with clients of the business. He notes that his contracts with the women explicitly state that the women will not "participate in any form of prostitution or soliciting of money for sexual services." He further notes that the business website contained a disclaimer that the company did not condone prostitution. He also argues that he thought Hamby had her "own clientele who she engaged in sexual activities," and that was why he expressed his opinion on her "performing manual sex on a client." Finally, he argues that the record reveals that the four encounters between the detectivesand the women who solicited them cannot be traced to his agency.

 **[P33]**  We disagree with Barker's assessment of the evidence. There is evidence that, if believed, supports a finding that the four encounters between the detectives and the women who were subsequently arrested resulted from advertisements posted by Barker on behalf of his company. The advertisements used pictures found on Barker's phone and laptop; and there is evidence that he

was responsible for taking the pictures. Furthermore, the calls made to the women as a result of the ad were made to telephones belonging to Barker. There is evidence that Barker drove his employees to their appointments with clients and was aware that they were engaging in sexual activity with the clients. Indeed, there is evidence in the record that the woman who testified that Barker knew she was arrested for prostitution was not fired. Furthermore, there is evidence that Barker did not fire Nicole Ford, despite knowing that she engaged in sex with clients. There is also evidence that Barker took a cut of each woman's earnings from her appointments. Regardless of his disclaimers concerning sex, the evidence supports a finding that Barker managed a business that engaged women to act as prostitutes. We conclude that this evidence is sufficient to prove the offense of Promoting Prostitution, and that this conviction is not against the manifest weight of the evidence.

**[P34]** Barker was also convicted of Engaging in a Pattern of Corrupt Activity, in violation of R.C. 2923.32(A)(1), which states that "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt." An enterprise "includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. [An enterprise] includes illicit as well as licit enterprises." R.C. 2923.31(C). A "'pattern of corrupt activity' means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E). "Corrupt activity" consists of "engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in * * * [a]ny violation of section 2907.22 [Promoting Prostitution]." R.C. 2923.31(I)(2)(c). "The existence of an enterprise is an element distinct from the pattern of [corrupt] activity and proof of one does not necessarily establish the other." *State v. Beverly*, 2d Dist. Clark No. 2011 CA 64, 2013-Ohio-1365, ¶ 29, citing *U.S. v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

**[P35]** In this case, there is evidence that Peekaboodayton is an enterprise owned by Barker, who is helped in running the business by his girlfriend. This enterprise is, according to Barker, a

legitimate business designed to provide adult entertainment in the form of private dances and massages. The business made disclaimers of prostitution through its website and its employment contracts. There is evidence that some of the entertainment provided by the business was merely legal adult entertainment. Barker admitted that he posted, and paid for, the advertisements for each of the women working for Peekaboodayton. He also provided the phones that the clients were directed to call. He took the women to and from their engagements, and took a portion of each woman's fees.

 **[P36]** There is also evidence to support multiple convictions for Promoting Prostitution, which are the basis for the "pattern of corrupt activity element" of Engaging in Corrupt Activity. Barker was aware that the women his company hired were engaging in prostitution while on assignments for the company. There is also evidence that four different women responded on behalf of Peekaboodayton to calls placed by Dayton Vice Detectives George and St. Clair from November 2010 to May 2011. Those women offered the detectives sex in exchange for money. Furthermore, there is evidence that one of those women had engaged in sex for money on assignments to which Barker had sent them on at least twenty prior occasions, and one had done so on at least 75 different occasions. This evidence is corroborated by Barker's interview with Detective Hamby indicating that Barker wasaware that the women were performing sexual acts for money.

 **[P37]** We conclude that there is sufficient, credible evidence to support Barker's conviction for Engaging in a Pattern of Corrupt Activity, and that conviction is not against the manifest weight of the evidence.

 **[P38]** Finally, Barker was convicted of Possession of Criminal Tools, in violation of R.C. 2923.24(A). That statute states, "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A).

 **[P39]** These charges relate to the laptop computer and two cellular telephones that were taken from Barker. There is evidence in the record sufficient to prove, beyond reasonable doubt, that Barker used these items for the purpose of Promoting Prostitution.

The Possession of Criminal Tools convictions are not against the manifest weight of the evidence.

**[P40]**  We conclude that the State presented evidence sufficient to prove beyond reasonable doubt that Barker committed the charged offenses. We further conclude that this is not the rare case where the jury lost its way and its verdicts are against the manifest weight of the evidence. Accordingly, the Second and Third Assignments of Error are overruled.

*State v. Barker, supra.*

As the court of appeals' analysis shows, there was evidence on each element of the charged crimes which, if believed by the jury (as it plainly was here), was sufficient to allow conviction.  The court of appeals decision is not an objectively unreasonable application of *Jackson v. Virginia*, and thus is entitled to deference under 28 U.S.C. § 2254(d)(1).

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

October 2, 2014.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).