IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

KEVIN J. BARKER,

    Petitioner,    :  Case No. 3:14-cv-321

 - vs -          District Judge Walter Herbert Rice
               Magistrate Judge Michael R. Merz

SHERRI DUFFEY, Warden,

              :

    Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

   This case is before the Court on Petitioner's Objections (Doc. No. 3) to the Magistrate Judge's Report and Recommendations (the "Report," Doc. No. 2). Judge Rice has recommitted the case to the Magistrate Judge for reconsideration in light of the Objections (Order, Doc. No. 4).

   Barker begins his Objections by stating that the Report recommends dismissal of "petitioner's writ as not involving any substantial constitutional question." (Objections, Doc. No. 3, PageID 34). Actually, that is the standard used by the Ohio Supreme Court in declining to review this case. *State v. Barker*, 139 Ohio St. 3d 1473 (2014). The Report concluded that the Second District Court of Appeals had decided both of Barker's constitutional claims on the merits and that court's decision was entitled to deference under 28 U.S.C. § 2254(d)(1) because its conclusions were neither contrary to nor objectively unreasonable applications of clearly established federal law.

1

**Objections on Ground One**

In his First Ground for Relief, Barker claims he received ineffective assistance of trial counsel.  The Petition presents this claim in very generalized fashion:

> Trial counsel failed in numerous charges to his client, he failed to properly prepare [sic] and investigate prior to trial, failed to explore exculpatory evidence and failed to pursue a line of defense that would have shown that the States theory was wholly lacking in fact and evidence and was unsupported by any credible standard of guilt beyond a reasonable doubt. Counsel was advised on numerous ocassion [sic] that the States theory was premised on evidence that was contrary to the facts and counsel completely failed to pursue the alternative theory that was presented to him and which could have easily shown that petitioner was not guilty of the charges presented.

(Petition, Doc. No. 1, PageID 5.)  Thus in his Supporting Facts for Ground One, Barker does not say with any particularity what his trial attorney did not do.

Barker spends twenty-five pages in his Objections, further particularizing his claims about what his trial attorney did not do:

1.
> Trial counsel **failed to interview numerous witnesses** whose testimony could have offered supporting evidence that would have contradicted the State's assertion that the petitioner did not employ certain people to work for him, that he did not condone the behavior associated with his company, and that he had, in fact, taken decisive action against those employees who had broken the contract to engage in conduct that was contrary to the agency's policy. His counsel failed to subpoena those witnesses whose testimony was not only crucial, but vital to disproving the State's misrepresentation of those facts, such as the alleged sexual contacts by certain independent contractors who had entered into a business agreement relationship with the agency.

(Objections, Doc. No. 3, PageID 37.)

2

2.

    Counsel **failed to subpoena the testimony of an expert defense witness** to provide distinct definition and application to the business relationship with regards to agent and principle [sic], master and servant, employee and independent contractor; to each responsibility to each other and to a third party.  Witness testimony would have provided information to the distinguish pro's and con's of document written contracts in comparison to verbal agreements in establishment of legal business relationship.  Witness could have provided testimony to the application of agent and principle [sic] relationship, as defined by the petitioner agency written contract, that defined principle as an independent contractor of the agency and not an employee. Witness could have provided demonstrative testimony that the agency written contract clearly established and defined the agency business objective, agency fee for providing services to independent contractor, additional services provided to the independent contractors (transportation and security), clearly established that the independent contractor controlled the mannerism of the the services performed to the third party, and that the agency clearly defined it's [sic] policy against prostitution and usage of any illegal substance at any event booked through the agency.

*Id.*  at PageID 38.

3.

    Counsel **failed to subpoena the testimony of an expert defense witness to provide testimony to the content stored and usage of the two personal computers**, one lap top computer, one note book computer and the three cell phones seized during the raid of the petitioner's residence.  Witness testimony would have provided testimony that would have shown that using the search terms "prostitution", or "prostitutes", or "prostitute", independently would have revealed a far greater number than the "Ten". Expert witness would have provided testimony to support the testimony of the State's expert witness testimony that there were no illegal content (Pictures, Conversation, Documentation, Emails or Text Messages) of any nature found stored on any of the devices. Expert witness testimony would have testified that the identification of an online news article relating to a prostitution sting in another city does not constitute that the individual who access this article was involved or promoting prostitution services as alluded to by the state. Expert witness testimony would have provided testimony to support the testimony of the State's expert witness that there were no unusual security installed on any of these devices to conceal access to use or access to content stored on these devices.  Expert

3

> witness testimony would have provided testimony that it is common practice for business to store there business information (marketing and advertisement material, documents, emails, identity of business associates, communication) on their business omputers, cell phones, and that these devices were utilize [sic] to conduct standard legit business activity.

*Id.* at PageID 39.

4.
> Counsel failed to subpoena the testimony from company representatives from Google, Backpage, Yahoo, Yellow Book, and the agency's advertisements that were posted on there [sic] company's online website. These witness[es'] testimony would have informed the jury of these the company's policy and objectives, provided testimony to the process to establish an account with their company and to post advertisements on their online sites. These defense witness[es] would have testified that the petitioner's advertisements were within their policy, content and photos were within the norm of adult entertainment business advertisements, that their company's do not support, promote, or condone any illegal activities. The defense witness from Backpage would have testified that the "Escort" section is not just for "Prostitutes and Pimps", would have made known that the petitioner could only establish one account under his name, that all advertisements posted under this account name can be access by the public, not just on the date of posting but upwards to a year.

*Id.* at PageID 40.

5. Counsel failed "to utilize the exculpatory evidence he had in his possession." *Id.* at PageID 41.

6. "Counsel failed to subpoena any of the independent contractor[s] of the agency, or the other witnesses listed on the defense witness list submitted by counsel into the court." *Id.* at PageID 42.

7. "Counsel failed to subpoena the testimony of Roger Carter who would have testified that he was not an employee, or an independent contractor of the agency . . ." *Id.* at PageID 44.

8. "Counsel failed the petitioner by agreeing with the prosecutor to play the video tape that

4

recorded the meeting between detective Hamby, Nicole Ford and the petitioner prior to Detective Hamby taking the stand, but after Nicole Ford's testimony." *Id.* at PageID 45.

9. "Counsel failed the petitioner further by not adhering to petitioner's request to take the stand to testify. . . . Had the petitioner taken the stand he would have provide authentication[1] to his words spoken during this meeting." *Id.*

10. "Counsel failed to subpoena the testimony of Mary Peterson who would have provided testimony to whom provider [sic] her the information to meet with detective George on May 25, 2011, . . ." *Id.* at PageID 46.

11. "Counsel failed to subpoena the testimony of Tonya Satterfield who would have testified that she never heard of the petitioner or his agency . . ." *Id.* at PageID 47.

12. "Counsel also failed to subpoena the testimony of Amanda Draughn who would have testified that she was not an employee or independent contractor of the petitioner's agency on November 19, 2010 . . ." *Id.*

13. "Counsel failed to impeach the state witness Julia Melton, who was the only one arrested during the four strong operations that had a [sic] independent contractor relationship with the petitioner." *Id.* at PageID 49.

14. "[Detective S.] Claire. Counsel also could have impeached this witness for her prior statements that may have contradicted her court room testimony, unfortunately counsel failed to demand these statements from the state, as the state had not provided the defense with this evidence." *Id.*

15. "Counsel failed to subpoena Judge Dennis Adkins, Montgomery County Sheriff Capt. Jeff Papanek, Mathias Heck Jr., [and] Victoria Watson whom [sic] would have provided

---

[1] While Barker uses the word "authentication," the context suggests that he means he would have provided an innocent explanation of his words. He does not claim the video recording is not authentic within the meaning of Ohio R. Evid. 901.

5

testimony that Roger Carter was not employed as a driver by the petitioner, and was not an independent contractor of the petitioner's agency." *Id.* at PageID 50.

16.   Failure to subpoena the lead investigators of a criminal organization run by Roger Carter and Jerry Miller. *Id.* at PageID 52.

17.   "Counsel failed to impeach state's witness Nicole Ford. . ." *Id.* at PageID 53.

18.   Counsel failed to "follow[ ] petitioner's instructions to subpoena the witness['s] mother (June Ford) brother (Michael Ford) testimony, whom would have both testified that they were not award [sic] of Nicole Ford['s] prostitution activity. *Id.* at PageID 54.

19.

> **Counsel failed to be loyal to the petitioner**, as counsel failed to secure the presence of a [sic] African American male on the jury, counsel failed to motion the judge to sequester the jury, following the Judge's announcement to the jury of the large amount of public interest in the petitioner's trial, counsel distanced himself from the petitioner and planted the seed in the jury's minds that he was a good guy, in his announcement to them that his wife was an assistant prosecutor, that the judge was his first employer, following is completion of law school, counsel failed to object to the prosecutor's opening statement that diluted the need for the jury to find the petitioner guilty beyond a reasonable doubt, when she announce to the jury that if they discovered snow in their yard, was it more reasonable to believe that it fell from the sky, or more reasonable that someone made the snow during the night, with a snow making machine, that her presentation in trial would be similar, that she wouldn't be able to provide the jury with all the specific details, but the jury found it reasonable, just as the[y] would find it more reasonable to believe that the snow fell from the sky, that they should find the petitioner guilty. Counsel in his opening statement failed to make known to the jury that five of the seven individuals illegal activities being associated to the petitioner's agency, were in fact not employee's, or had any contractual relationship with the agency, that one of these individual's not associated, in fact was known by area law enforcement, Montgomery County Courts and Prosecutor's office as the leader of a drug and prostitution organization, that the petitioner's agency had come under investigation by two over zealous detectives, who had a personal interest to this individual.

> Counsel conceded the case to the state with his closing remarks, that it would be ok if all the women with agency had sexual activity and made porno movies, with every citizen in Montgomery County, that the jury would have to be found not guilty, as the women were aware of the petitioner's agency policy against prostitution. Counsel's closing remarks fit right in alignment with what the state was asserting, that the petitioner was simply using the agency written contract as a shield, and didn't care what the girls did at the appointments booked through his agency.

*Id.* at PageID 54-55.

Most of Barker's claims relate to trial counsel's failure to subpoena various witnesses. Barker has not provided any proof of what these witness would have testified to; his claims about what they would have said are entirely speculative. In addition, Subclaims 5, 9, 13, 14, and 17 all depend on evidence which is not of record. As the Second District Court of Appeals held,

> **[\*P24]** Barker does not cite to any portion of the record to support his claims. Instead, he attaches to his appellate brief an affidavit in which he avers that trial counsel was deficient in the above-cited ways. In a Decision and Entry dated November 19, 2013, upon motion of the State, we struck the affidavit as being outside of the record of this appeal. We cannot consider matters outside the record in a direct appeal. *State v. Pittman*, 2d Dist. Montgomery No. 25167, 2013-Ohio-962, ¶ 13, citing *State v. Cooperrider*, 4 Ohio St.3d 226, 228-229, 4 Ohio B. 580, 448 N.E.2d 452 (1983).

Ohio provides a remedy for defendants whose claims of ineffective assistance of trial counsel depend on evidence outside the record, a petition for post-conviction relief under Ohio Revised Code § 2953.21. But the record does not show Barker ever filed such a petition and indeed his Petition here affirmatively states that he did not do so (Petition, Doc. No. 1, ¶ 10, PageID 3.)

When deciding whether a state court decision is contrary to or an unreasonable application of clearly established federal law, a federal habeas court is limited to the record before the state court. *Cullen v. Pinholster,* 563 U.S. ___, 131 S. Ct. 1388 (2011), Furthermore, as noted in the Report, Barker has procedurally defaulted on any opportunity to present this

7

evidence outside the record by failing to file a petition for post-conviction relief within the time allowed by Ohio law (Report, Doc. No. 2, PageID 24).

In Subclaim 8, Barker complains of his counsel's agreeing to permit the playing of a video recording of a meeting among Detective Hamby, Nicole Ford, and Barker at a particular point in the trial. This sequence would of course be part of the trial record before the court of appeals. Barker does not state how this constituted deficient performance or how it prejudiced his case. Furthermore he did not raise this sub-claim on direct appeal and it is therefore procedurally defaulted.

Barker's Subclaim 19 is also procedurally defaulted as it was never presented to the Second District. Furthermore sequestration of a non-capital jury would be very rare and a motion for it was very unlikely to have been granted. Finally, there is no way defense counsel could have guaranteed the presence of an African-American male on the jury.

Barker's Objections as to his First Ground for Relief are not persuasive.

**Objections on Ground Two**

In his second Ground for Relief, Barker asserts his conviction is not supported by sufficient evidence. The Report concluded that the Second District's conclusion to the contrary was entitled to deference under 28 U.S.C. § 2254(d)(1)(Report, Doc. No. 2, PageID 25-31).

In arguing his Objections on this Ground for Relief, Barker makes a number of points about why various State's witnesses should not have been believed. This of course goes to the witnesses' credibility, which is a question for the jury. To the extent Barker relies on material which is not in the record, that it not a valid objection to the court of appeals' finding based on

what is in the record.  Barker has not refuted the existence in the record of the evidence on which the Second District relied.  Therefore Barker's Objections as to the Second Ground for Relief are not persuasive.

**Conclusion**

Having reconsidered the Report in light of the Objections, the Magistrate Judge again respectfully recommends that the Petition be dismissed with prejudice.   Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

October 27, 2014.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).